425 So.2d 791 (1982)
Roger MUSEMECHE, Plaintiff-Appellee,
v.
G & J MOBILE HOME SERVICE & SUPPLIES and Winston Industries, Inc., Defendants-Appellants.
No. 8833.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
Rehearing Denied July 26, 1982.
*792 William H. Lambert, Lafayette, for defendants-appellants.
James E. Fontenot, Abbeville, for plaintiff-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
STOKER, Judge.
Plaintiff, Roger Musemeche, instituted this suit in redhibition to recover the price of a mobile home sold to him by defendant G & J Mobile Home Service and Supplies (G & J Mobile Homes) and manufactured by defendant Winston Industries, Inc. (Winston).
*793 Plaintiff's suit was against both G & J Mobile Homes and Winston. G & J Mobil Homes filed a third party demand against Winston. Judgment was granted in favor of plaintiff against G & J Mobile Homes for the purchase price of the mobile home, $21,840.00, and for plaintiff's attorney's fees of $1,000.00. Judgment was also rendered in favor of G & J Mobile Homes on its third party demand against Winston for any and all sums which G & J is liable for to the plaintiff.
The trial court's reasons for judgment indicated judgment should be granted in favor of plaintiff solely against G & J Mobile Homes. The only judgment against Winston was rendered in favor of G & J Mobile Homes on the third party demand. The formal judgment signed by the trial judge was in conformity with the reasons for judgment. Thus, there is no judgment in favor of plaintiff against Winston. Winston appealed suspensively from the judgment in favor of G & J Mobile Homes. G & J Mobile Homes appealed suspensively from the judgment in favor of plaintiff. The plaintiff did not appeal the trial court judgment for failure of the court to grant judgment in his favor against Winston. G & J Mobile Homes has never filed a brief in this court and no appearance was made on its behalf prior to the time the case was called for oral argument on the day the case was docketed, April 15, 1982. Under the circumstances, we consider that G & J Mobile Homes has abandoned its appeal. Under the provisions of Section 5(b) of Rule VII of the Uniform Rules of the Courts of Appeal we ex proprio motu dismiss the appeal of G & J Mobile Homes.[1] In view of this dismissal the only appeal we have before us is that of Winston, the appeal of the judgment in favor of G & J Mobile Homes on the third party demand against Winston.
It is settled that a dealer-seller may have judgment over against the manufacturer of an item which the dealer sells when the sale is rescinded for redhibition. The right was specifically confirmed by the addition of the second paragraph of LSA-C.C. art. 2531 in 1974. As amended this article reads:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
The right has been discussed and construed in a number of recent cases and applies both to a rescission of a sale and to the lesser remedy of reduction in price. Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4th Cir.1981), writ denied, 406 So.2d 608 (La.1981); Dixon Enterprises, Inc. v. Restaurant Products, Inc., 389 So.2d 859 (La.App. 4th Cir.1980); Millin v. Dawson, 387 So.2d 1213 (La.App. 1st Cir. 1980); Cernigliaro v. Marquis Marine, Inc., 381 So.2d 886 (La.App. 2nd Cir.1980); Riche v. Krestview Mobile Homes, Inc., 375 So.2d *794 133 (La.App. 3rd Cir.1979); Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App. 3rd Cir.1979), writs denied 371 So.2d 835 (La.1979), 372 So.2d 568 (La.1979); Robertson v. Jimmy Walker Chrysler-Plymouth, Inc., 368 So.2d 747 (La.App. 3rd Cir. 1979), writs denied, 371 So.2d 833, 834 (La. 1979); Laughlin v. Fiat Distributors, Inc., 368 So.2d 742 (La.App. 3rd Cir.1979) and Daigle v. Robinson Bros., Inc., 368 So.2d 186 (La.App. 1st Cir.1979).
The posture of this case is somewhat unique in that plaintiff's judgment against G & J Mobile Homes is no longer at issue, but Winston is attacking the validity of that judgment because of G & J Mobile Homes' judgment over against Winston in its third party demand. In large measure therefore, the arguments on the issues are the same as those which would be made by G & J Mobile Homes if G & J Mobile Homes had pursued its appeal and was resisting the claims of the plaintiff.
In its appeal Winston sets forth four specifications of error in the trial court's judgment.
Winston alleges that the trial court erred in:
1. Failing to sustain Winston's motion to dismiss plaintiff's action to rescind the sale at the conclusion of plaintiff's case, as provided by LSA-C.C.P. article 1810, based on his failure to prove a redhibitory action under LSA-C.C. article 2520.
2. Failing to find the defects complained of were so minor in nature as to require a diminution in the sale price, rather than rescission of sale.
3. Failing to find the acceptance of $1,000.00 and execution of settlement agreement was final and defendants were released from further obligation of warranty.
4. Alternatively,
a. Failing to give Winston credit for the $1,000.00 payment against any judgment rendered against them.
b. Failing to grant Winston a credit for plaintiff's continued use of the mobile home.
Although Winston's answer alleged that the defects complained of did not result from the manufacturing process, the evidence does not sustain the defense, and Winston has not raised this issue on appeal.

FACTS
Plaintiff's evidence adduced at trial consists of brief testimonies by him and his wife of some of the problems they experienced with the home, photographs of water damage in the home, and an extensive handwritten chronological record or log kept by plaintiff's wife of the various defects as they occurred or were discovered in the home by the couple. This log was introduced into evidence and consists of the following complaints: extensive leaks in the roof in various parts of the home, including water leaks around the heater vent and the stove vent pipe; a defective fan in the stove vent which diverts cooking smoke into the home; toilets which are not bolted properly to the floor and are loose; a hole in the bathroom floor which admits air into the home; a shower door which will not close properly; a loose shower head in the shower stall; doors and storm doors which leak because they are not properly fitted; knobs on all fixtures which constantly come loose; and loose carpeting in some of the rooms which buckles and causes persons to trip.
Three witnesses testified for the defendants. The consensus of their testimony is that many of the problems plaintiff complained of have been corrected, although some problems still remain, such as the leaking around the vents and doors and the loose carpeting. Dennis Jones, the service manager for Sherwood Homes, testified that the remaining problems in the home except for the roof leaking could be corrected for the sum of $388.00. The two partners of G & J Mobile Homes who testified agreed with that figure, and one of them, Clement Gautreaux, estimated that the roof leaks could be fixed for an additional $200.00.

*795 MOTION TO DISMISS UNDER LSA-C.C.P. ART. 1810 B
Defendant alleges that the first error committed by the trial court is its refusal to grant the motion for dismissal under LSA-C.C.P. art. 1810[2] made at the close of plaintiff's evidence. In two recent opinions of this Court, Semien v. P.P.G. Industries, Inc., 413 So.2d 956 (La.App. 3rd Cir.1982), and Burrell v. Kirkpatrick, 410 So.2d 1255 (La.App. 3rd Cir.1982), we held that in considering a motion to dismiss in a judge-tried case, the trial judge has a responsibility to weigh and evaluate all the evidence and render a decision based upon a preponderance of the evidence. We find that plaintiff established a cause of action in redhibition by a preponderance of the evidence showing substantial defects in the mobile home. Therefore, there is no merit in defendant's first specification of error.

REDUCTION IN PRICE IN LIEU OF RESCISSION OF SALE
Defendant Winston alleges as its second assignment of error that the trial court should have confined itself to granting plaintiff a reduction in the sale price of the mobile home rather than granting him a complete rescission of the sale and a return of the full sale price.
The Louisiana Civil Code articles relevant to our inquiry into this issue are as follows:
"Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
* * * * * *
"Art. 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.
* * * * * *
"Art. 2543. The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action.
"But in a redhibitory suit, the judge may decree merely a reduction of the price."
Plaintiff in this case instituted an action in redhibition only and did not plead in the alternative for a reduction of the price. However, under LSA-C.C. art. 2543, the trial judge was legally empowered to grant the plaintiff a reduction in price (despite the limitation of his claim for relief to redhibition) if the evidence had warranted the granting of the lesser remedy. Defendant Winston argues that the defects in the mobile home of which plaintiff complains are not serious enough to render the mobile home "either absolutely so useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." LSA-C.C. art. 2520. Defendant cites two cases, Cassey v. Arnaudville Industries, Inc., 393 So.2d 215 (La.App. 1st Cir.1980), and Wolfe v. Henderson Ford, Inc., 277 So.2d 215 (La.App. 3rd Cir.1973) for the proposition that in every redhibition action, the judge has the power and the duty to decree a quanti minoris (reduction in price) if he believes that the evidence establishes only a partial failure of consideration.
In the Cassey case, the trial court found that one major defect which could be corrected and five other minor defects in a mobile home were not sufficient to justify a *796 rescission of the sale of the home and ordered a reduction in the price instead. However, we feel that the case of Gonzales v. Southwest Mobile Homes, Inc., 309 So.2d 780 (La.App. 3rd Cir.1975), writ denied, 313 So.2d 239 (La.1975), is more analogous to the case before us. In both the Gonzales case and the case before us, the purchaser of a mobile home discovered several serious defects in the home shortly after moving in, including severe water leakage. Some of these defects were corrected, but in both cases the water leakage could not be stopped after several attempts to correct the problem. This court noted in Gonzales at page 784:
"The testimony of the other witnesses called by the plaintiff and the inspection of the mobile home by the judge revealed that there were leaks around certain windows in the mobile home. Careful evaluation of all the testimony and his personal inspection of the mobile home resulted in the trial judge finding that there was sufficient leakage to render the mobile home so inconvenient that it must be presumed that the plaintiff would not have purchased it had he known of these defects. There was evidence before the trial judge which, upon its reasonable evaluation of credibility, furnished a reasonable factual basis for his findings and conclusions. There has been no showing of manifest error; therefore, we will not disturb his findings. See Canter v. Koehring, 283 So.2d 716 (La.1973)."
See also Dougherty v. Petrere, 240 La. 287, 123 So.2d 60 (La.1960).
In the case before us, in addition to hearing the evidence, the trial judge made a personal inspection of the mobile home. We do not have the benefit of a written itemization of the specific defects which the trial judge found, but we can assume from his comments in open court that he found the defects to be neither minor nor easily reparable as defendant contends they are.[3] The trial judge had evidence before him to justify these conclusions, and there is no indication that these conclusions are clearly wrong. Therefore, we will not disturb the trial court's judgment on appeal. Canter v. Koehring, supra; and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

EFFECT OF SETTLEMENT AGREEMENT
Winston specifies as error the trial court's failure to find that a compromise agreement between Sherwood Homes, a division of Winston Industries, Inc., and plaintiff was a final settlement of plaintiff's claims and released defendant from all further obligations of warranty. Plaintiff contends that the agreement applied only to certain cosmetic defects and contained a clause continuing the warranties as to the plumbing, electrical system, roof, and floor of the mobile home.
The relevant portions of the agreement are as follows:
"Therefore, in consideration of the payment of the sum of money hereinafter referred to, the parties hereby and herein mutually RELEASE, ACQUIT, and FOREVER DISCHARGE the other from any kind and all claims, damages, causes or action, warranties, guarantees, or other rights, or obligations resulting from any and all manufacturing defects in the above referenced mobile home, with the exceptions of the items listed below.*
* * * * * *
*"Warranty on Plumbing, Electrical, roof and floor to be in full force until July 16, 1980. Sherwood to complete work on wall of fiberglass tub enclosure and correct defective airconditioner ducts." (Emphasis supplied.)
The italicized parts of the above excerpt were added to the agreement at a later date and were initialled by all three signers of the document, Roger Musemeche, his wife, Linda Atchetee Musemeche, and Dennis Jones, signing for Sherwood Homes, a division of Winston Industries, Inc.
*797 From the quoted portion of the agreement it can be clearly seen that the warranties as to the plumbing, electrical system, roof, and floor of the mobile home continued until July 16, 1980, one year after the purchase of the home. Therefore, we fail to see how this agreement can be construed as a complete settlement of all of plaintiff's claims, particularly since plaintiff's greatest complaint concerned the leaking in the home, primarily through the roof. Defendant's third allegation of error has no merit.

CLAIM OF CREDIT FOR $1000 PAID IN "SETTLEMENT"
Winston's fourth specification of error deserves closer scrutiny. Winston claims that it is entitled to a credit of $1,000 on the sale price of the home if the rescission of the sale is upheld. Winston through its Sherwood Homes division paid $1,000 as consideration for the agreement discussed above, and contends that it should be reimbursed that amount since the purpose of an action in redhibition is to place the parties in the same position they were in before the sale. See Associates Financial Services Company v. Ryan, 382 So.2d 215 (La.App. 3rd Cir.1980) and Gour v. Daray Motor Company, Inc., 373 So.2d 571 (La.App. 3rd Cir.1979), writ granted, 376 So.2d 1270 (La. 1979), writs dismissed, 377 So.2d 1033 (La. 1979).
Winston made this same argument at the hearing for a new trial. The trial judge in his minute entry explaining his reasons for denying defendant's application for a new trial stated:
"In the original Judgment rendered against the defendant, the Court took into consideration damages as well as interest in the amount awarded to plaintiff. Thus, the Judgment rendered on June 17, 1981, will not be set aside and annulled as it is proper according to the laws and jurisprudence of the State of Louisiana." (Emphasis supplied.)
Plaintiff contends that the trial judge did not reimburse defendant for the thousand dollars because he considered this amount to be a partial compensation to plaintiff for the loss of the interest on the purchase money used to buy the mobile home. Plaintiff paid the $21,840.00 purchase price in cash on July 16, 1979, and this suit was filed on July 11, 1980. Thus, defendant G & J Mobile Homes had the use of plaintiff's money for almost a year, and continues to have the use of the money pending this suspensive appeal, although any interest earned on the purchase price since July 11, 1980, is offset by the running of legal interest in favor of the plaintiff from the date of judicial demand.
Possibly the court's decision to deny a credit for the $1,000 paid to plaintiff may be justified on equitable grounds. However, we will pretermit any consideration of the merit of the trial court's denial of credit for the $1,000 made on the basis of offsetting credits. In considering the compromise settlement agreement and the evidence, we have already stated that the agreement cannot be construed as a complete settlement of all plaintiff's claims. As originally written the agreement purported to be a full settlement of all claims. As amended so many items were excepted from the scope of the settlement that we are at a loss to determine what items or deficiencies the $1,000 was supposed to cover. In oral argument we were advised that the $1,000 merely covered "cosmetic" items, whatever that might mean.
Conceivably the $1,000 might cover the correction of certain items which would still fall short of repairing the mobile home so as to remove it from a condition in which it is so absolutely useless, or so inconvenient to use and so imperfect that it must be supposed that the buyer would not have bought it if he had known of the vices or condition. This possibility becomes plausible when we consider that the parties exempted from this agreement any settlement of disputes as to plumbing and problems relating to the electrical system, roof and floors, all major items.
Under the circumstances we will affirm the trial court's refusal to give Winston Credit for the $1,000 paid in the purported "compromise settlement".

*798 CLAIM FOR CREDIT FOR PLAINTIFF'S USE OF MOBILE HOME
Defendant further contends that if the rescission of the sale is upheld, the return of the purchase price should be offset by a credit for plaintiff's use of the mobile home. This contention is based upon the provisions of LSA-C.C. art. 2531 which we have quoted above. It is plaintiff's position that it is only the non-manufacturing seller who can claim a credit for the value of the use which the purchaser has drawn from the thing purchased. In other words, it is contended that the manufacturer does not have this right.
This issue has been discussed in two recent cases and was resolved against the contentions of plaintiff. In Smith v. Max Thieme Chevrolet Company, Inc., 315 So.2d 82 (La.App. 2nd Cir.1975), the Court of Appeal for the Second Circuit relied upon some very early Louisiana Supreme Court cases, which held "in cases involving cash sales, that the buyer does not have to pay for his use of the thing from the time of the purchase until rescission of the sale where it is offset by the seller's use of the cash price during the same period." It was said that the object of Article 2531 is to place the parties in the same position that they were in before the sale as nearly as possible under the circumstances. However, it was concluded that the jurisprudence did not hold, in the rescission of cash sales, that the use of the thing by the purchaser and the use of the purchase money by the seller must in all cases be considered as exact equivalents.
In the Louisiana Supreme Court case of Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978) the Supreme Court took up argument that a bad faith seller should not be entitled to compensation from the purchaser for the use of the thing because LSA-C.C. art. 2545, setting out the obligation of the bad faith seller, omits any reference such as that found in LSA-C.C. art. 2531. The Supreme Court observed that the Courts of Appeal have not generally treated good faith and bad faith vendors differently in compensating the vendors for the buyer's use of the defective thing. The Supreme Court said also that "credit for a purchaser's use of a product may be proper in certain instances, even in favor of a bad faith seller."
However, it also stated that "[c]ompensation for the buyer's use, however, ought not be granted automatically by the court; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair."
In Alexander v. Burroughs Corp., supra, the Supreme Court referred to the "rule of equivalences" and stated that it was based on the earlier Louisiana cases which were referred to in Smith v. Max Thieme Chevrolet Co., supra. Nevertheless, the Supreme Court did note that the use of the thing and the interest on the price should not automatically be deemed equivalents. In this regard the Supreme Court cited Smith v. Max Thieme Chevrolet Co., supra, which held that the court is required to independently assess the respective values received by the buyer and the seller and determine the extent to which one has been compensated by the other.
Alexander involved an accounting computer. The Supreme Court resolved the case stating:
"The facts of the instant case present a situation in which the buyer, rather than the seller, is penalized by the application of the rule of equivalencies. The record is convincing that the defects in the Burroughs computer were so significant and consistent as to render the machine absolutely useless to Peerless. We recognize that for approximately two to three months after the computer's memory bank was replaced and some wiring was done in the building, the computer functioned with much less difficulty. Nevertheless, we find that the benefit of that use was overridden by the serious malfunction before and after that time which required company employees to monitor the machine's figures for accuracy, watch *799 payroll checks to make sure that the correct name was recorded, and eventually abandon use of the computer for another accounting machine ten years older, which the company had used prior to the computer purchase."
We are also impressed by the handling of this issue in two recent cases. In Bison v. LaHood, 390 So.2d 920 (La.App. 2nd Cir. 1980) a mobile home was involved. The report of the case lists an itemization of defects somewhat similar to the defects in this case. In that case the court stated:
"Lastly, Sherwood contends that the trial judge erred in refusing to grant it an offset of $200 per month based on the use value of the mobile home to plaintiff. Sherwood presented evidence in the form of testimony showing the rental value of comparable mobile homes in the area. The trial judge considered this testimony but found a rental credit of $50 per month was appropriate in this instance because of the many defects present in the home. The fair rental value was definitely affected by the defective conditions, and the reduction allowed by the trial judge was well within his discretion. See Weaver v. Fleetwood Homes of Mississippi, Inc., supra."

The Weaver case referred to in the quotation given above is to Weaver v. Fleetwood Homes of Mississippi, Inc., 327 So.2d 172 (La.App. 3rd Cir.1976). The same issue under discussion here was involved there. The resolution made in the Weaver case can best be given by simply quoting the following paragraph from the case:
"Defendants allege as error the trial judge's refusal to grant them a credit of $200.00 per month for the rental value of the unit. The amount granted by the trial judge was $60.00 per month. Defendants base their contention of error on the testimony of Bacon's witness, Mrs. Cele Cook, a Natchitoches real estate woman, who was accepted by the court as an expert in rental appraisals. She stated that a fair rental value for the mobile home in the Natchitoches area was $200.00. Defendants argue that this testimony was not contradicted and therefore must be accepted as the figure for the court to use in setting the credit due defendants. We do not agree with this argument. The record reflects the unpleasant conditions in which plaintiff and his family lived as a result of the defects in the mobile home. A reduction in the fair rental value established by the evidence was appropriate in view of the many defects with which the plaintiff and his family were confronted daily while living in the mobile home. We find no abuse of discretion in the trial court's award in this connection; therefore, it will remain undisturbed."
A further recent application of the credit rule from this court was involved in DeBlieux v. Arkla Industries, Inc., 390 So.2d 233 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 901 (La.1981). The DeBlieux case relied on Alexander Burroughs Corp., supra, and stated that it is clear from the case that the granting of credit for the buyer's use is discretionary with the trial court. It was urged in DeBlieux that the trial judge had abused its discretion by not allowing a credit for use of a central air conditioning system which was subject to an action in redhibition. This court upheld the trial court denial of the credit because plaintiff's family had been greatly inconvenienced by the poor performance of the air conditioning system. Although it had provided cooling some of the time, breakdowns were very frequent. The unreliable nature of the system made entertaining in the home difficult. This court said:
"Under these circumstances, we cannot say that the trial judge erred in concluding that the value of the plaintiffs' use of the system was overridden by the inconvenience that they suffered."
In this particular case whether or not we were to hold that the plaintiffs' use of the mobile home was overridden by the inconvenience caused by the defects or whether we applied offsetting credits, we feel that we would arrive at the same result. Witnesses for Winston testified that a mobile home of the kind involved in this case *800 would rent for $350 per month. In view of the inconveniences an occupant would have to suffer in using the home, it is our opinion that the value of the rental would have to be reduced in like manner as the cases indicated above. We feel that the rental would have to be reduced to a figure between $100.00 and $150.00. The amount would certainly be offset by any reasonable amount of interest to which the plaintiff would be entitled.
Although the plaintiff takes the position that Winston should not be allowed any credit at all, it urges in the alternative that "should this court allow any credit to the manufacturer for use of the mobile home by the buyer, then Respondent, buyer, is entitled to full interest on the purchase price of from the date of sale." Interest on the purchase price of $21,840 at 7% per annum amounts to approximately $127.40 per month, a figure within the range of the reduced rental value of the mobile home. We therefore conclude that the value of the use of the mobile home and the value of the interest on the purchase money are equivalent, relatively speaking.
On the basis of the above discussion, we think that the trial court did not commit error in failing to grant any credit to defendant Winston for the use which plaintiff has had of the mobile home.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendant Winston Industries, Inc.
AFFIRMED.
NOTES
[1] The pertinent portion of Section 5 of Rule VII of the Uniform Rules of the Courts of Appeal reads:

"Section 5. The court may, ex proprio motu:
* * * * * *
(b) Consider abandoned and dismiss the appeal in any case in which the appellant has neither appeared nor filed a brief prior to the time the case is called for oral argument, or the time the case is submitted without oral argument on the docket of the court.
By `appearance' is meant personal appearance in open court, or the filing of a written instrument negating any intent to abandon the appeal, or the filing of a written pleading; * * *"
[2] The relevant portion of LSA-C.C.P. art. 1810 is as follows:

"B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence."
[3] In denying defendants' motion for a new trial, the trial judge made this comment: "... as a factual basis, I found that the defects were not minor as you [defendant's counsel] had argued."