hLANDRIEU, Judge.
Defendants, the Regional Transit Authority [“RTA”] and Transit Management of Southeast Louisiana, Inc.[“TMSEL”], appeal the trial court’s judgment awarding damages to plaintiffs for injuries incurred by their mother, Priscilla Walton, while she was riding on a streetcar. We affirm.
On December 7, 1995, Ms. Walton boarded a RTA streetcar at the corner of Carondelet and Canal Streets in New Orleans. As the streetcar entered the curve on Canal Street, Ms. Walton, who was sitting down, felt a jolt and heard a loud noise and a popping noise, after which the streetcar came to an abrupt stop. Because an overhead cable had fallen to the ground in front of the streetcar, the passengers were required to remain on the streetcar for approximately one hour until it could be ascertained that there was no danger from live electrical wires.
According to Ms. Walton, the jerking motion of the streetcar when it stopped first propelled her forward, causing her to hit her chest on the seat in front of her, then jerked her backward, causing her to strike the back of her head and neck on her seatback. Although she did not realize she was injured at the time of the incident, Ms. Walton awoke the next morning unable to move her neck. Besides the stiffness in her neck, she also had back pain. Five days after the accident, Ms. Walton was examined by a physician, who diagnosed a cervical/trapezius strain. Ms. Walton was treated with pain medication, heat and physical therapy for approximately five months, until her pain had completely subsided.
*134 |Jn December 1996, Ms. Walton filed a petition for damages against RTA, TMSEL, New Orleans Public Service, Inc. [“NOPSI”], and Entergy Corporation and Entergy New Orleans, Inc. [collectively referred to as “Entergy”]. RTA and TMSEL filed an answer and cross claim against NOPSI and Entergy seeking indemnity and/or contribution. Entergy, formerly known as NOPSI, answered the plaintiffs claim and filed a cross claim against RTA and TMSEL..
At a pretrial motion hearing, the trial judge denied plaintiffs motion to have RTA held in contempt for its failure to produce an accident report requested by plaintiff during discovery. The judge also granted a motion by plaintiffs counsel to substitute as plaintiffs the heirs of Ms. Walton, who had died after the suit was filed from causes unrelated to the incident sued upon.
The case was tried without a jury on July 22, 1998. At its conclusion, Entergy moved for involuntary dismissal from the suit, which motion the judge took under advisement. On July 31, 1998, the court rendered judgment in favor of plaintiffs against RTA and TMSEL in the amount of $4,500.00 for past pain and suffering and $1005.00 for medical expenses, plus court costs and interest. The court also rendered judgment in favor of Entergy, granting its motion for involuntary dismissal. In response to a request by RTA and TMSEL pursuant to Louisiana Code of Civil Procedure article 1917, the trial judge issued written reasons for judgment. According to those reasons, the finding of liability on the part of RTA was based upon the testimony of William Walsh, an overhead lineman for Entergy, that the incident was probably caused by the streetcar travelling too |3fast, which testimony the court found to be credible. In addition, the trial judge found that the parties had failed to introduce any evidence as to Entergy’s liability.
RTA and TMSEL appeal this judgment asserting that the trial court erred in finding RTA negligent, in failing to find Enter-gy strictly liable, and in failing to apply the “sudden emergency doctrine” to exculpate RTA. Plaintiffs, in their brief entitled “Ap-pellee’s Answer To Defendant’s Appeal,” argue that the judgment should be affirmed and assert two additional arguments seeking affirmative relief: (1) that the trial court should have granted their motion for contempt and/or sanctions against RTA for its failure to produce an accident report requested during discovery; and (2) that the trial judge should have awarded plaintiffs damages for the mental anguish and emotional distress experienced by Priscilla Walton.
We decline to consider plaintiffs’ requests for affirmative relief because they have failed to comply with the requirements of Louisiana Code of Civil Procedure article 2133. That article provides that an appellee who seeks to have a judgment modified, revised, or reversed in part, or who demands damages against the appellant, must file an answer to the appeal not later than fifteen days after the return day or lodging of the record, whichever is later. Despite plaintiffs’ assertion that their “answer” is designed to comply with article 2133, that document cannot operate as an answer under the law because it was not filed timely. See Landry v. Nobility Homes, Inc., 488 So.2d 726, 728 (La.App. 3rd Cir.1986), writ denied, 491 So.2d 21 (La.1986). The appeal was filed August 26, 1998; the record was lodged in this court December 18, 1998; and appel-lees’ answer was filed June 1, |41999. In view of these facts, we must consider the answer to be a brief, and we are precluded from granting appellees any affirmative relief.
Turning to the merits of the appeal, we conclude after examining the record that the trial judge did not commit manifest error in finding RTA negligent. Besides the deposition of the original plaintiff, Ms. Walton, the evidence at trial concerning liability consisted of three fact *135 witnesses: Mr. Bethly, the driver of the streetcar; Mr. Von Dullen, a TMSEL superintendent, and Mr. Walsh, an overhead lineman for Entergy.
Mr. Bethly testified that as he entered the curve on Canal Street, “the whole line just fell down.” Although the power source was cut off, he was able to stop the streetcar using the air brakes and the reserve air tank. The streetcar did not cross the downed lines. Mr. Bethly stated that he did nothing to cause the cable to come down. He estimated that the speed of the streetcar was about one to two “points,” which he did not believe was too fast. Ms. Walton, when asked in her deposition how fast the streetcar was going, responded: “I don’t know. You know how streetcars go. They don’t be going exactly fast, fast, fast.”
Mr. Von Dullen, the superintendent of rail facilities for TMSEL, testified that he inspected the streetcar at the scene of the accident and found nothing wrong with it. Although the streetcar was brought into the shop to be checked and remained there for the rest of the day, no repairs or maintenance were actually done on it. Mr. Von Dullen stated that “one to two points” of speed is equivalent to eight to twelve miles per hour. He stated he did not work on overhead lines, and therefore could not comment on the cause of the cable coming down.
Mr. Walsh testified that he had been an overhead lineman for Entergy for sixteen years and wras currently working as a troubleshooter. He inspected the ^fallen cable and found that it was not worn, but it had “pit marks,” indicating it had come in contact with something with an incompatible electrical charge and had “burned” down. Mr. Walsh stated that the position of the trolley pole indicated that the streetcar had come off the cable, and the trolley pole had then struck the metal pole connected to the overhead wire, causing the wire to burn and fall. He stated that he had seen the same thing happen twice before. According to Mr. Walsh, if the streetcar took the turn too fast, in his words, “just a little faster” than normal, the car could become disconnected. Mr. Walsh also stated that Entergy did not routinely inspect the overhead cables, or any other overhead lines in the city, and that such an inspection could not have prevented this accident.
The appellants argue that the trial judge erred in finding RTA negligent under these facts. Specifically, they argue that Entergy should have been found strictly liable because it had custody of the overhead power lines that caused the accident. They also argue that the driver of the streetcar was not negligent because he reacted appropriately to a “sudden emergency.” We disagree.
Considering the evidence presented, it was not manifestly erroneous for the trial judge to conclude that the speed of the streetcar caused the accident. The trial judge specifically noted that she found Mr. Walsh to be credible. In fact, his testimony presented the only reasonable explanation as to how the accident occurred; none of the other witnesses had any knowledge as to its cause.
Furthermore, although other witnesses testified that the streetcar was not travel-ling too fast, Mr. Walsh stated that it would have had to have been going only a little faster than normal to have set off the chain of events he saw evidence of. Under these circumstances, we cannot say the trial judge erred in holding that the preponderance of the evidence pointed to the negligence of the streetcar driver.
| fjWe also find no error in the trial court’s determination that Entergy was not strictly liable for the accident, as there was no evidence of any defect in the overhead power lines. To recover under strict liability, a plaintiff must prove that: (1) the thing which caused the damage was in the custody of the defendant; (2) the thing was defective because it had a condition that created an unreasonable risk of harm to the plaintiff; and (3) the defective *136 condition of the thing caused the plaintiffs injuries. Lee v. Magnolia Garden Apartments, 96-1328 at p. 13 (La.App. 1 Cir. 5/9/97), 694 So.2d 1142 at 1150, writ denied, 97-1544 (La.9/26/97), 701 So.2d 990. An unusual occurrence in and of itself is not proof of a defect. McBride v. Cracker Barrel Stores, Inc., 649 So.2d 465, 468 (La.App. 3rd Cir.1994).
Evidence at trial included a 1983 Transfer Agreement between NOPSI and RTA by which NOPSI transferred ownership of the streetcar line to RTA, and an accompanying contract whereby NOPSI agreed to furnish electricity for the streetcar and to “furnish, operate and maintain” the necessary equipment (including trolley wire) required to deliver such electricity. Paragraph 7 of the contract exonerates NOPSI from responsibility for loss of service or injury which results from acts of God, strikes, force majeure, riots, civil commotion or any other circumstances beyond the control of NOPSI. In paragraph 6, RTA agrees to indemnify and hold harmless NOPSI from and against any and all claims, suits, liabilities, losses, damages, or expenses arising from the furnishing of electricity to, and for use by, the streetcar system, except to the extent as such arise out of the negligence or intentional wrongful conduct of NOPSI.
Although these documents may establish Entergy (NOPSI’s successor) as the custodian of the overhead power lines, there was no evidence to |7show that the lines were defective, or that a failure on the part of Entergy to properly maintain the lines was a cause of the accident. There was no expert testimony on the issue of liability or causation. Mr. Walsh testified that the overhead cable which fell was not worn, but rather had burned down as a result of coming into contact with an incompatible electrically charged thing, such as the trolley pole. There was no evidence to dispute this testimony, other than the streetcar driver’s statement that he did nothing to cause the cable to fall. The other witness, Mr. Von Dullen, said he did not know why the cable fell. The trial judge accepted Mr. Walsh’s view that the streetcar had become disconnected and had caused the accident. The trial court’s assessment of the credibility of witnesses is entitled to great deference on appeal. Under these circumstances, we find no manifest error in the trial court’s dismissal of Entergy.
Accordingly, for the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.
PLOTKIN, J., CONCURS WITH WRITTEN REASONS: