462 So.2d 1291 (1985)
Joseph T. LaFRANCE
v.
ABRAHAM LINCOLN MERCURY, INC., and Ford Motor Company.
No. 84-CA-212.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 1985.
Rehearing Denied February 20, 1985.
Writs Denied April 19, 1985.
*1292 John David Cassanova, Metairie, for defendant-appellant Abraham Lincoln Mercury, Inc.
Charles L. Chassaignac, Wiley G. Lastrapes, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendant-appellant Ford Motor Co.
Harry T. Hardin, III, Mendoza & Hardin, Marrero, for plaintiff-appellee Joseph T. LaFrance.
Before KLIEBERT, BOWES and GAUDIN, JJ.
KLIEBERT, Judge.
This is an appeal by defendant seller, Abraham Lincoln Mercury, Inc. (Abraham) and defendant manufacturer, Ford Motor Company (Ford) from a judgment in favor of plaintiff purchaser, Joseph T. LaFrance, rescinding the sale of a 1979 Lincoln Mark V. Abraham answered plaintiff's suit and filed a third party demand against its co-defendant, Ford, seeking indemnity and/or contribution. Ford answered plaintiff's original petition and Abraham's third party demand but did not file a third party demand. The trial court rendered judgment rescinding the sale and cast Abraham and Ford in solido for the purchase price plus the finance charges, interest and insurance premiums incurred by plaintiff together with $2,500.00 in attorney's fees. The trial court did not specifically rule on plaintiff's third party demand, therefore, under the ruling of Financeamerica Corporation v. Thibodeaux, 419 So.2d 543 (3rd Cir.1982), we consider it rejected.
On appeal both defendants contend the trial court erred in finding that the automobile contained redhibitory defects. Abraham additionally appeals from the trial court's failure to rule on its third party demand seeking indemnity and/or contribution *1293 from Ford and the award of attorney's fees to the plaintiff. For the reasons which follow, we affirm.
In September of 1978, plaintiff, Joseph T. LaFrance, and his wife went to Abraham and while there custom ordered a silver 1979 Lincoln Mark V with a silver vinyl top.
A car arrived at the dealership on October 23, 1978 but had some slight differences from the one they had ordered. Plaintiff decided to take the automobile subject to certain changes listed on a work order, namely, the vinyl top was to be changed from grey to silver, a broken glass over the miles-to-empty gauge was to be replaced, the right hand entry light was to be repaired, and the rear arm rest was to be adjusted. Subject to those conditions, the plaintiff accepted the car.
Shortly after the purchase, the automobile developed a series of mechanical problems. First, the headlights would not function properly. The car was returned to the dealer numerous times before this problem was corrected. Next, the car's engine began to knock at speeds in excess of 35 miles per hour or 1,800 rpms. Again the car was returned to the dealer for repairs.
The dealer returned the car in three days, explaining it cured the problem by cleaning the hydraulic lifters. Plaintiff questioned whether the work had been done because he noticed that the bolts on the valve covers were still freshly painted. The service manager conceded that it would be difficult if not impossible to clean the hydraulic lifters without removing the valve covers. He then told the plaintiff he would replace a defective cylinder head.
The plaintiff again returned to the dealership and was told the car was repaired; however, the engine noise persisted. The service manager then informed him that both cylinder heads would have to be replaced. The plaintiff left the car with the dealer for an additional three weeks to have this done.
The service manager then informed plaintiff that the entire engine was going to be replaced. When the car was finally returned, the engine had not been replaced and the original engine was poorly maintained. Further, the engine was improperly bolted and numerous hoses and bolts were poorly connected. The service manager once again asked that the car be returned for repairs.
Plaintiff left the car for an additional week. When he returned the automobile still had numerous broken or disconnected parts, hence, he left it there. Finally he concluded he could not receive satisfaction from the dealer and consulted with his attorney.
Both defendants now contend the trial court erred in rescinding the sale of the automobile because the defects were repairable.
Civil Code Article 2520 defines redhibition as follows:

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
Although minor defects alone do not constitute sufficient grounds to rescind a sale, in our view, the cumulative defects shown here have rendered the use of the car so inconvenient and imperfect that any reasonable person would not have purchased it had he known of the vice. Further, the plaintiff gave defendants more than ample time to repair whatever malfunctions which could have been made to the vehicle to render its use less inconvenient. Perrin v. Read Imports, Inc., 359 So.2d 738 (4th Cir.1978). Hence, we cannot say the trial judge erred in rescinding the sale.
Abraham contends any redhibitory defects were the result of Ford's improper manufacturing. Hence, it claims full indemnification under the provisions of C.C. article 2531 which provides as follows:
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing *1294 for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect.
This article grants to a dealer, such as, Abraham, statutory right of action against the manufacturer of the thing sold, when the seller has been held liable to the purchaser because of redhibitory vices in the thing sold. To succeed in the action, however, the dealer must show the manufacturer of the vehicle was the sole cause of the redhibitory defect for which the dealer was cast in judgment.
In this case, both the manufacturer and the dealer were the cause of the redhibitory defect. Besides the defective engine which is attributable to Ford, the record is replete with instances in which the inconveniences and imperfections of the use of the car was a direct result of the improper repairs and services rendered by Abraham. The combination of these defects results in the redhibitory vice which leads to the rescision of the sale. Since Abraham cannot establish that the redhibitory vice was attributable exclusively to Ford it is not entitled to indemnity. Bacile v. Parish of Jefferson, 411 So.2d 1088 (4th Cir.1981); Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (4th Cir.1981); Perrin v. Read Imports, Inc., supra; Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (1st Cir. 1973).
Both defendants contend the trial court erred in casting them liable in solido. On appeal they ask that this court assess the individual culpability of the defendants and apportion damages accordingly. In support of their contention they rely on Lokey v. Dixie Buick, Inc., 400 So.2d 322 (4th Cir.1981) for jurisdictional authority that damages may be apportioned under Louisiana law notwithstanding an in solido liability.
We find the Lokey case to be clearly distinguishable from the instant case. In Lokey, at page 328, the court stated:
[3] In the present case many of the defects in the motor home, although not all of them, were of the kind that could have been remedied by Dixie, which was responsible for servicing the vehicle. Some of the other problems with the motor home, however, such as the defective refrigerator and the generator, were obviously the responsibility of the manufacturer, Holiday, to replace or repair.
The jury in Lokey determined that 80% of the damages or defects in the mobile home were caused by mechanical problems which were attributable to the vehicle and therefore to the dealer manufacturer of the vehicle, while 20% of the defects were attributable to the mobile home and therefore to the manufacturer of the mobile home, Holiday. The mobile home in the Lokey case is physically distinguishable from an ordinary automobile. The mobile home consists of two distinct componentsthe vehicle component responsible for making the mobile home run, and the living quarters and its fixtures. The judgment rendered in Lokey recognizes that distinction and apportioned the amounts due by each according to that determination. Meanwhile, Dixie retained its right of action under La.C.C. Article 2531 against the manufacturer of the vehicle, Ford, who was not a co-defendant in the case. Thus, the effect of the Lokey case was to apportion between the manufacturer of each component in accordance with the defects attributable to the component manufactured by each. Consequently, it does not apply to the situation here.
In the instant case the trial court found that the redhibitory vice in the vehicle component which led to the rescision was a combination of the defects of the manufacturer, Ford, and by the improper repairs and service by the dealer, Abraham. Once the trial court reached this factual conclusion, it could and did hold the dealer and the manufacturer solidarily liable to the purchaser for the purchase price and expenses necessary to restore the purchaser to the position he was in immediately prior to the sale. Lehn v. Clearview *1295 Dodge Sales, Inc., supra; Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972). Appellants point to none and we know of no statutory or jurisprudential authority by which we may apportion damages among co-defendants prior to the amendment of La.C.C. Article 2103.[1] Each solidary obligor is liable for the whole with a right of contribution from their co-obligor of his virile share. La.C.C. Article 2103 (prior to the amendment); Appalachian Corporation, Inc. v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539 (1922).
Abraham also contends the trial court erred in holding it liable in solido for attorney's fees because it is not a bad faith seller within the meaning of La.C.C. Article 2545 which provides as follows:
The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
Ford, as manufacturer of the auto is presumed to have knowledge of the defects in the auto. Lokey v. Dixie Buick, Inc., supra. Abraham, as seller, must be shown to have had knowledge of the defects in order to be held liable for attorney's fees.
As stated above, Abraham was responsible for numerous inconveniences and imperfections that rendered the auto unfit for its intended use. It had full knowledge and was well aware that its failure to effect repairs combined with the manufacturing defects were rendering the car useless for its intended use. Under those circumstances the seller is liable with the manufacturer for the attorney fees. Leathers v. Mobile Home Brokers, Inc., 382 So.2d 967 (1st Cir.1980).
Plaintiff argues in his brief for additional fees to cover the appellate portion of this case. We note that plaintiff has neither appealed the trial court's judgment nor answered the defendants' appeals. Further, we feel that $2,500.00 in attorney fees awarded by the district court is sufficient compensation for the work performed at both the trial and appellate levels.
Accordingly, the judgment of the trial court is affirmed. All costs of the appeal are to be borne by the appellants.
AFFIRMED.
NOTES
[1] The amendment of Article 2103 which allows apportionment of damages amongst solidary obligors became effective August 1, 1980.