LAWRENCE A. CHEHARDY, Judge Pro Tem.
Thomas J. Boyd, plaintiff, appeals the dismissal of his redhibition suit against M & M Dodge, Inc. and Chrysler Corporation. Boyd sought to rescind his purchase of a 1982 Dodge D150 Ram Miser pickup truck manufactured by Chrysler and sold to him by M & M.
Boyd asserted that he began to have problems with the truck within a few months after he bought it. He brought it to the dealer, who informed him there was a defective throwout bearing in the clutch assembly. M & M repaired the truck under warranty. Boyd continued to have problems and the dealer repaired the vehicle three more times. Boyd was dissatisfied, however, and felt the repairs had not alleviated the problems. He offered to return the vehicle to M & M in return for the purchase price, but the dealer refused. Accordingly, Boyd filed suit.
M & M contended that any defect in the vehicle had been repaired and that any defects still present were due to plaintiffs improper use and operation of the truck. M & M filed a third-party demand against Chrysler, seeking contribution or indemnification in the event plaintiff recovered on the main demand.
Chrysler asserted that any defects in the vehicle existing subsequent to its purchase were caused by a failure to service and maintain it or to improper use and operation of the vehicle. Chrysler in turn third-partied M & M for contribution or indemnification in the event of plaintiff’s recovery.
After a non-jury trial, the district court rendered judgment in favor of the defendants, dismissing plaintiff’s demand and dismissing the defendants’ third-party de *769 mands against each other. In its reasons for judgment the court found that any defect that might have existed in the truck at the time of purchase had been remedied by the dealer’s repairs. (The judge himself had test-driven the truck; he considered the noises the truck made normal.)
Plaintiff had also contended that the truck was not powerful enough to pull his bass boat, despite the salesman’s statement to him that the truck could pull the boat. The court found that the salesman’s casual remark could not be construed as an express warranty. Even if it were, the court stated, the plaintiff had failed to prove the vehicle could not pull his boat. The court concluded the evidence showed the truck could pull the boat, although not with the speed and power plaintiff had experienced with his previous truck (a 1979 Chevrolet Silverado). The court felt the plaintiff, an automobile salesman, was chargeable with the knowledge that the smaller engine and drive train of the new truck would lack the power of his previous truck, especially since plaintiff became interested in the Ram Miser because it was economical and inexpensive.
Further, the court concluded plaintiff had failed to prove entitlement to a reduction in the purchase price, because he failed to prove he was seriously inconvenienced. The truck was in the shop for repairs only four times, never for even a full day, much less overnight. Because there was minor inconvenience, the court assessed costs against the defendants.
On appeal the plaintiff argues (1) the trial court erred in finding that the statement of the salesman regarding the truck’s ability to pull a bass boat was not a mistaken declaration as to a quality of the thing sold and (2) the court erred in finding that if any defects existed, they had been repaired by M & M.
LSA-C.C. art. 2529 provides,
“A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase.”
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.” LSA-C.C. art. 2520.
“Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.” LSA-C.C. art. 2521.
The plaintiff testified on cross-examination that the principal reason he bought the Ram Miser truck was because it was inexpensive and would provide better gas mileage. Although he stated repeatedly that he wanted the truck to pull his boat, we do not believe that was his principal reason for buying the truck. Even if it were, he failed to prove he communicated that to the salesman.
Jerry McCrary, who sold him the truck, vaguely recalled that plaintiff had asked whether the truck could pull a bass boat. McCrary could not remember clearly, but felt sure he had told the plaintiff the truck would pull the boat. There is nothing to establish that plaintiff ever indicated to McCrary that this was his principal reason for buying the truck. (See LSA-C.C. art. 1949.) According to McCrary, plaintiff’s questions mostly concerned economy and fuel mileage.
Plaintiff testified he had a “fair working knowledge of an automobile.” He admitted that to an extent fuel economy and power of an engine have some relationship to each other. He testified that when pulling his bass boat he had trouble maintaining speed in the overdrive gear, trouble accelerating, and that the valves would clatter when he tried to accelerate. He also complained of problems with the engine idle and of intermittent grinding sounds when the clutch pedal was depressed. He admitted, however, that the truck did pull the boat. He testified further that he had replaced the standard tires *770 of the truck with larger tires known as mud-grips.
The defense elicited testimony from Glenn Hall, plaintiffs expert auto mechanic, that changing to oversized tires could have an effect on gear ratio, which could make the clutch start slipping and could make it noisy. He also stated that towing a heavier weight than recommended by the manufacturer could cause transmission and clutch problems.
Joe Knowles, Chrysler’s expert, established that the owner’s manual for the truck set the maximum recommended towing weight at 2,000 pounds. (Plaintiff had testified that he weighed his boat and trailer on a truck scale the night before the trial started and discovered they weighed 1,980 pounds.) If towing more than 2,000 pounds, Knowles said, the truck would not have a lot of power, it could run a little hot, the brakes might not be adequate to stop the weight in an emergency and it would be hard to move from a standing start. In addition the clutch could be damaged.
He testified further that when using oversized tires on the truck the gear ratio would change, causing the engine to run slower so the engine could not develop full horsepower. That would make it harder to move from a standing start and it would have less acceleration after it got moving. On a hot day it could cause the engine to overheat. From a standing start, the driver would have to.slip the clutch a little more to get it to move, which eventually would cause an early failure of the clutch. He admitted, however, that the owner’s manual stated only that use of oversize tires could affect vehicle handling, wheel life or clearance of vehicle components.
The Chrysler expert also testified that when he examined the truck he had discovered evidence of tampering with the vehicle’s emission control system. He found a steel ball in the vacuum hose that works the exhaust gas recirculating (EGR) valve. He stated this would cause pre-ignition knock, sometimes referred to as valve clatter. His inspection disclosed no problems with the clutch linkage, nor did his test-drive of the truck reveal the grinding sounds Boyd complained of.
Francis Reed, a mechanic from M & M’s service department who qualified as an expert, testified M & M had replaced the throw-out bearing in April, August and November of 1983. He stated they had test-driven the truck after each repair to determine that the “chattering” of the bearing had been corrected. Reed testified further that “riding the clutch” or towing a heavy vehicle could damage the throw-out bearing. He felt it was possible that if Boyd had used the truck to tow a heavy trailer that could have caused the throw-out bearing to go bad.
In addition, the entire clutch assembly had been replaced in September 1983. Eddie Schouest, another M & M mechanic, testified he had worked on the vehicle for that repair. He stated they could not find anything wrong with the truck, but had replaced the clutch assembly “just to make everybody happy.” These repairs were all done pursuant to the mechanical parts warranty on the vehicle.
The trial court’s determination of the existence of a redhibitory vice is a question of fact that should not be disturbed in the absence of manifest error. Dickerson v. Begnaud Motors, Inc., 446 So.2d 536 (La.App. 3 Cir.1984). Reviewing the evidence in light of the law, we find no manifest error on the part of the trial judge here. Nor do we find any abuse of the trial court’s wide discretion in its denial of a reduction in the purchase price. The court's ultimate inference was that the plaintiff’s desire to return the pickup truck arose from a general dissatisfaction in the overall performance of the vehicle, which was less powerful than the vehicles he was accustomed to, than from any specific “defect.”
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal, like the costs in the district court, are assessed against the defendants-appellees.
AFFIRMED.