514 So.2d 540 (1987)
John L. ROBERT, Jr., D.D.S., Plaintiff-Appellee,
v.
BAYOU BERNARD MARINE, INC. and AMF, Inc., Defendant-Appellee, Bayou Bernard Marine, Inc., Defendant-Appellant, AMF, Inc.
No. 86-201.
Court of Appeal of Louisiana, Third Circuit.
September 22, 1987.
Writs Denied December 11, 1987.
*542 Theall and Fontana, Anthony Fontana, Jr., Abbeville, for defendant-appellant.
Calvin Woodruff, Jr., Abbeville, for plaintiff-appellee.
Jeansonne and Briney, Katherine M. Loos, LaFayette, for defendant-appellee.
Before DOUCET, LABORDE and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in finding the manufacturer solely liable for damages in an action in quanti minoris.
Dr. John L. Robert, Jr. (hereinafter Robert) filed suit in redhibition for damages sustained as a result of his purchase of a fishing boat (hereinafter boat), engines, tackle, and trailer from Bayou Bernard Marine, Inc. (hereinafter Bayou). Bayou filed a third party demand against the boat manufacturer, AMF, Inc. (hereinafter AMF), *543 seeking indemnification, specified damages, and attorney's fees. At trial, the suit was converted by Robert to an action in quanti minoris. After trial judgment was rendered on the main and third party demands and a judgment was signed. Bayou filed a motion for a new trial. After granting the motion for a new trial, for reargument only, the trial court rendered judgment in favor of Robert and against AMF for diminution in value of the boat, engines, and trailer, for inconvenience, mental anguish, loss of use, etc., for interest paid in financing the boat, for insurance on the boat, for the cost of gasoline lost in the use of the boat, for the cost of certain repairs to the boat, and for attorney's fees. Judgment was also rendered on the third party demand in favor of Bayou and against AMF for the cost of other repairs to the boat, for attorney's fees, for legal interest, and for all court costs of the proceeding. AMF appeals. Both Robert and Bayou answer the appeal, seeking an increase in the award of attorney's fees. We amend and render judgment.

FACTS
Robert arranged to purchase a 1981 Robalo fishing boat from Bayou whose business premises were located in Gulfport, Mississippi. The boat had been previously sold and later returned to the manufacturer, AMF, for repair of cracks in the gelcoat finish of the hull. AMF repaired the cracking in the gelcoat finish of the boat's hull and had the boat in stock for sale at a reduced price. AMF advised Bayou's employee that the boat had been reconditioned because of some cracking in the gelcoat finish of the boat's hull and he informed Robert. Robert agreed to purchase the boat through Bayou and made a deposit on the purchase price. Bayou installed twin 115 Evinrude engines, tackle, spray hood, and other accessories, and sold the boat, engines, tackle, and trailer to Robert for a total sales price of $20,383.00, being $8,400.00 for the boat, $4,500.00 each for two engines, $1,600.00 for the trailer, $888.00 for the tackle and accessories, and $495.00 for trailer brakes. On August 10, 1982 Bayou delivered the boat to Robert in Abbeville, Louisiana where the sale documents were also delivered. Bayou, through its employee, Anthony Jones, told Robert that the boat was being sold as a new boat with a full warranty. A manufacturer's statement of origin, furnished at the time of the sale, showed the sale of the boat as a new sale from AMF to Bayou. A written new boat warranty statement from AMF was also furnished to Robert at the time of sale and Robert executed a boat warranty registration form on August 10, 1982 which had typed at the bottom "Structural Hull Warranty Only".
Robert first used the boat on August 14, 1982. At that time, he put approximately 48 gallons of gas in the 128 gallon inboard tank and operated the boat for a short while without any apparent difficulty.
On August 19, 1982, Robert took the boat to the gas station to fill the inboard tank to its maximum capacity in preparation for a trip the following weekend. After filling the inboard tank with approximately 115 gallons of gas, Robert felt that something was possibly wrong. One of the attendants walked around to the back of the boat and discovered that gas was seeping through one of the bolt holes, where the port motor mount was bolted to the transom of the boat. When the hull's bilge drain plug in the boat's transom was pulled, gasoline shot out from the drain in a steady stream. The gas station attendants then attached a vacuum hose to the boat and pumped approximately 21 gallons of gas from the bilge of the boat. Robert took the boat home and drained about 10 more gallons of gas from the bilge of the boat.
Robert immediately contacted the Bayou salesman, Anthony B. Jones, and reported the problem. Jones called the AMF factory and spoke with a representative, who informed him that the foam in the boat hull would possibly have to be ripped out and replaced. Jack Markowitz, Bayou's general manager, told Jones he did not think that Bayou was qualified to rip out the entire inside of the boat. Jones reported this information to Robert, who testified that he was told there was a possibility that if *544 the foam could not be removed, the hull would have to be completely replaced.
The boat was returned to Bayou for repairs on August 31, 1982. Bayou's mechanics disassembled the boat and discovered that the screws on the fuel sending unit and the unit itself were loose. Markowitz called AMF when the problem was identified and located. AMF suggested that Bayou replace the fuel sending unit, wash out the hull, and reassemble the boat, since there was no further damage. AMF claims that Bayou was informed at that time that AMF was not willing to replace the foam flotation in the boat's hull, as it was made of closed cell foam which would not absorb liquids such as gas or water, since it could not have been damaged by the fuel overflow. Bayou denied that it was told this at this time.
Bayou informed Robert that it had located and identified the problem, and Robert then contacted AMF to determine whether Bayou was qualified to perform the repairs. Robert was informed by AMF that the boat had been sold as a used boat, and that he was fortunate that AMF was willing to do anything at all about the problem. Robert then contacted Markowitz who informed him that the boat was sold as a new boat and that it was covered under AMF's new boat warranty.
On September 2, 1982, Robert's attorney wrote a letter to both AMF and Bayou. AMF responded to the letter of Robert's attorney and stated that the boat was sold as a used boat without a new boat warranty but with only a structural hull warranty. Robert then requested that Bayou obtain some type of certification from a qualified individual that there was no danger that the boat would explode due to the possibility of any gasoline or fumes remaining in the foam flotation in the boat after it was reassembled. Bayou advised AMF of Robert's request and also informed AMF that it was unable to get the Coast Guard to certify that the boat was safe.
On October 1, 1982, Robert drove to Gulfport, Mississippi to inspect the boat at Bayou's premises. At that time the boat was still disassembled and Robert detected an "extremely strong odor of gasoline" through the drain hole which ran from the bilge of the boat. Robert then informed Bayou that he refused to take the boat without it being certified for safety. The boat remained in Bayou's possession, in its disassembled condition until April 6, 1984, when AMF's expert finally certified that the boat was safe and free from any explosive fuel or vapors. Robert agreed to accept the boat in June, 1984. Bayou replaced the fuel sending unit in the boat and then reassembled and returned the boat to Robert in August, 1984. Bayou's cost for these repairs was $769.50.
After receiving the boat, Robert experienced problems with the motor tilt trim control and other minor problems, which he had repaired at a local dealership at a cost of $345.39. Robert then discovered that the motors had been improperly installed on the boat by Bayou. Robert had a local dealer cut the transom of the boat and rehang the two motors at the proper height at a cost of $200.00. Shortly thereafter, Robert found a bent wheel on the trailer sold to him by Bayou and discovered that the trailer was the wrong size for the boat. He traded in the trailer he had purchased from Bayou and purchased a new one from a local dealership losing $600.00 in the trade in of the trailer.
Robert filed suit in redhibition against Bayou and AMF on October 27, 1982. Bayou then filed a third party demand against AMF for indemnification, or in the alternative, contribution and for specified damages and attorney's fees. At trial on the merits, the action was converted by Robert into a suit for reduction in the purchase price, related damages, and attorney's fees.
After trial on the merits the trial court originally held both Bayou and AMF equally liable for Robert's damages and assessed damages in the amount of $30,577.92, which consisted of $4,066.00 for lost interest, $658.00 for insurance payments, $5,000.00 for inconvenience, mental anguish, loss of use, etc., $345.39 for repairs, $600.00 for trailer depreciation, $2,965.00 for boat depreciation, $4,266.00 for engine depreciation, and $12,677.52 for attorney's *545 fees. Judgment was rendered in favor of Robert and against AMF for $120.00 for lost gas. Judgment was awarded in favor of Bayou on its third party demand and against AMF for repairs of $769.50, and for attorney's fees of $6,744.40. The costs of the proceedings were taxed equally to Bayou and AMF. After a hearing on a motion for a new trial filed by Bayou, the court amended its judgment and assessed all damages, costs, and attorney's fees solely against AMF. The court then granted judgment in favor of Bayou on its third party demand against AMF for attorney's fees of $13,488.80, and for the cost of repairs of $769.50, together with legal interest. All court costs of the proceedings were taxed to AMF.
AMF suspensively appealed from the judgment, with the amount of the appeal bond fixed and ordered posted as required by law. We note that the record does not show that a suspensive appeal bond was ever posted. The jurisprudence requires that although an appeal may be dismissed as suspensive, it must be considered as devolutive, if the appeal was taken within the delays for taking a devolutive appeal. Ward-Steinman v. Karst, 446 So.2d 999 (La.App. 3 Cir.1984), aff'd, 465 So.2d 227 (La.App. 3 Cir.1985); Estate of Boudreaux v. Verdin, 425 So.2d 873 (La. App. 1 Cir.1982); Aucoin v. Williams, 291 So.2d 504 (La.App. 3 Cir.1974), rev'd on other grounds, 295 So.2d 868 (La.App. 3 Cir.1974). This appeal was timely taken within the delays for applying for a devolutive appeal. For this reason we maintain this appeal as a devolutive appeal.
AMF appeals asserting that the trial court erred:
(1) In finding that a defect existed in the boat;
(2) In not applying the recognized legal standards for a diminution in price;
(3) In allowing Bayou indemnification from the manufacturer; and
(4) In awarding damages for mental anguish and inconvenience.
Robert and Bayou both answered the appeal, requesting additional attorney's fees.

ASSIGNMENT OF ERROR NUMBER 1
AMF first asserts that the trial court erred in finding that a defect existed in the boat. Under the provisions of LSA-C.C. Articles 2530 and 2541, a purchaser may maintain an action for a reduction in price or quanti minoris by proving that a defect existed in the thing sold, at the time of the sale, which diminished the value of the thing and it is not necessary that the purchaser prove the cause of the redhibitory vice or defect in the thing. Broussard v. Breaux, 412 So.2d 176 (La.App. 3 Cir. 1982), writ den., 416 So.2d 115 (La.1982). Such an action is proper when the thing sold is so defective that it is useless and altogether unsuitable for its intended purpose or when the defect is such as to diminish its value. Harris v. Automatic Enterprises of Louisiana, Inc., 145 So.2d 335 (La.App. 4 Cir. 1962).
Robert contends that the evidence is absolutely uncontroverted that the fuel sending unit affixed to the top of the inboard gasoline tank was improperly attached, which allowed gasoline to flow from the fuel tank compartment or well into the interior of the boat. Both AMF and Bayou admit that the screws on the sending unit were loose, but claim that the exact cause of the problem was never determined.
The testimony of the parties and experts corroborates the fact that it was improper for such a great amount of gasoline to have escaped into the interior hull of the boat from the bottom of the compartment or well under the fuel tank and then to the bilge of the boat. An expert for AMF also testified that there should not have been a leak of fuel outside of the fuel cell, without overfilling the inboard fuel tank, as the fuel sending unit was on top of the inboard fuel tank. He also stated that the inboard fuel tank should not have become overfilled, since the handle of a gasoline pump should have released itself when the tank of the boat was topped off.
Although the exact cause of the accumulation of gasoline into the bilge inside of the boat was not determined, the evidence *546 is uncontroverted that the boat failed to perform in the intended matter under conditions of normal use. If the plaintiff proves that the product purchased is not reasonably fit for its intended use it is sufficient, and the object is thus defective, without plaintiff being required to prove the exact or underlying cause for the product's malfunction. Gamble v. Bill Lowrey Chevrolet, Inc., 410 So.2d 1155 (La.App. 3 Cir. 1981); Rey v. Cuccia, 298 So.2d 840 (La.1974).
While it is well settled that a plaintiff need not prove the underlying cause of the defect, it is incumbent that a plaintiff does prove the existence of a defect at the time of the sale. Commercial Union Ins. v. Ryland, 457 So.2d 255 (La.App. 3 Cir.1984). The jurisprudence has provided that in the absence of other explanations, a defect appearing soon after the thing is put into use may be inferred to have preexisted the sale, when such defect does not usually result from ordinary use. Rey v. Cuccia, supra; Griffin v. Coleman Oldsmobile, 424 So.2d 1116 (La.App. 1 Cir.1982); Perrin v. Read Imports, Inc., 359 So.2d 738 (La.App. 4 Cir.1978).
In this case, the sale of the boat was completed on August 10, 1982 and the boat delivered to Robert. Robert took the boat on a short excursion four days later where everything appeared normal. On August 19, 1982, which was only nine days after the sale, Robert experienced major problems when he attempted to fill the boat's inboard fuel tank with gasoline, which is certainly an ordinary use of the boat. Since the defect appeared soon after the boat was put into ordinary use, the defect may be inferred to have pre-existed the sale.
In his oral reasons for judgment, the trial judge found that the boat was defective since it was not fit for the purpose intended. The trial court's determination of the existence of a redhibitory vice is a question of fact that should not be disturbed in the absence of manifest error. Boyd v. Chrysler Corp., 487 So.2d 768 (La.App. 3 Cir.1986); Ball v. Ford Motor Co., 407 So.2d 777 (La.App. 1 Cir.1981).
We do not find the trial court was manifestly in error in finding the boat defective.

ASSIGNMENT OF ERROR NUMBER 2
In its second assignment of error AMF contends that the trial court did not apply the proper legal standards for a reduction in the purchase price, which is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. AMF further asserts that one of the principal elements in formulating reduction of price is the cost of repairs, citing Griffin v. Coleman Oldsmobile, supra; Ball v. Ford Motor Co., supra; and Capitol City Leasing Corp. v. Hill, 404 So.2d 935 (La.1981).
The cost of repairs, however, is not necessarily the sole measure of the diminution in value resulting from defects. When the repair of the defects are lengthy, a greater reduction is warranted, because a forewarned buyer would not reasonably pay the full price if he knew that repair of the defects would significantly curtail his use and cause him considerable inconvenience and aggravation. Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La. App. 4 Cir.1974), writ den., 303 So.2d 186 (La.1974).
AMF contends that although the trial judge recognized that the action was in quanti minoris, he based his judgment on damages that would be appropriate in a redhibition action. It is well established that the action for reduction of price is subject to the same rules and to the same limitations as the redhibitory action. LSA-C.C. Art. 2544; Gonzales v. Schultis, 427 So.2d 669 (La.App. 4 Cir.1983); Borne v. Mike Persia Chevrolet Co., Inc., 396 So.2d 326 (La.App. 4 Cir.1981), writ den., 401 So.2d 976 (La.1981).
The trial court has reasonable discretion to assess the amount of recovery in quanti minoris based on the facts and circumstances of the case. LeMoine v. Hebert, 395 So.2d 353 (La.App. 1 Cir.1980). In estimating the amount of reduction in the purchase price, the trial judge may *547 appropriately consider not only the cost of repairs, but also the numerous problems, the frequent inconvenience, loss of use, depreciation, and the overall poor performance in relation to that expected. Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4 Cir.1981), writ den., 406 So.2d 608 (La.1981); Bendana v. Mossy Motors, Inc., 347 So.2d 946 (La.App. 4 Cir.1977).
In this case the trial judge emphasized that Robert was greatly inconvenienced by the fact that he was deprived of the use of his boat for almost two years. He also assessed the depreciation of the boat, engines and trailer during this period of time. The function of the appellate court is to determine whether the trial judge's estimate of damages is reasonable. Bendana v. Mossy Motors, Inc., supra.
We find no merit in the assignment of error that the trial judge did not consider the proper standards in diminishing the sales price. The trial judge considered the appropriate factors in assessing the amount of recovery in quanti minoris. In reviewing the evidence in the record, we do not find that the trial judge's estimate of damages was unreasonable or manifestly in error.

ASSIGNMENT OF ERROR NUMBER 3
In its third assignment of error, AMF contends that the trial court erred in allowing indemnification to Bayou on its third party demand seeking indemnification. LSA-C.C. Articles 2531 and 2545 provide the seller with a redhibition cause of action in the nature of indemnity against the manufacturer. Austin v. North American Forest, 656 F.2d 1076 (5th Cir.1981).
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller has a corresponding and similar right of action against the manufacturer for any losses sustained by the seller. LSA-C.C. Art. 2531; LaFrance v. Abraham Lincoln Mercury, Inc., 462 So.2d 1291 (La.App. 5 Cir.1985); Cox v. Lanier Business Products, Inc., 423 So.2d 690 (La.App. 1 Cir.1982), writ den., 429 So.2d 129 (La.1983). If the redhibitory vice is caused solely by the manufacturer, then indemnity is due the seller, however, the manufacturer and seller can be held liable in solido if the seller is also negligent when there is a defect. See LaFrance supra at 1294; Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4 Cir.1981), and cases cited therein. Clearly, the jurisprudence has stated a negligent seller cannot escape the repercussions of its own negligent conduct simply by the existence of a defect in the thing sold. Perrin v. Read Imports, Inc., 359 So.2d 738 (La.App. 4 Cir.1978); Landry v. Nobility Homes, Inc., 488 So.2d 726 (La.App. 3 Cir.1986); LaFrance, supra. If dilatory tactics or negligent repairs aggravates the defect or creates more damage, then the seller can be held liable. Lehn, supra; Lokey v. Dixie Buick, Inc., 400 So.2d 322 (La.App. 4 Cir.1981). As the seller and the manufacturer can be held liable in solido each may seek contribution from the co-obligor of his virile share. See LSA-C.C. art. 1804; Lokey, supra.
AMF contends that while a seller is normally entitled to recover his losses in a redhibition action from the manufacturer, indemnification is denied to the seller when the loss is caused by the seller's fault such as failure to remedy easily repairable defects, the seller's dilatory actions, or the seller's tardiness in repairing the vice in the thing sold, or when the seller's negligence is a substantial factor in aggravating or maintaining the defects, citing Wheeler v. Clearview Dodge Sales, 462 So.2d 1298 (La.App. 5 Cir.1985); Fernandez v. Clearview Dodge Sales, Inc., 437 So.2d 1188 (La.App. 5 Cir.1983); Perrin v. Read Imports, Inc., supra; Lehn, supra; LaFrance, supra; Landry, supra; and Lokey, supra.
AMF's own expert testified that there were a number of explanations as to how gas could have escaped into the interior of the hull. The trial court found that there had not been a definite showing that Bayou was at fault in not timely completing the repairs. Bayou was not negligent in discovering and correcting the problem with the fuel sending unit and washing *548 out the boat. Bayou's representative only told Robert what AMF's representative had told it, that the foam in the boat might have to be ripped out and replaced because of the fuel leak. Robert called AMF to determine if Bayou was capable of performing such repair work and only then found out that AMF would not treat the boat as a new boat under warranty, but was taking the position that it would only warrant the boat as to structural hull defects. The delay in Robert accepting the boat after repair of the fuel sending unit was his fear of the danger that might have been created by the leak of gas into the boat if he operated the boat. After reviewing the evidence we do not find that the trial judge was clearly in error in finding AMF, as the manufacturer of the boat, liable for the subsequent damages caused by the delay in the return of the boat to Robert. In the absence of such a showing, Bayou as the seller, is entitled to reimbursement from the manufacturer, AMF, for any losses sustained by it. Ball v. Ford Motor Co., supra.
AMF also contends that it should not be liable for the damages assessed for depreciation on the trailer and the two engines, as well as the repair work associated with the engines, since Bayou as the seller of the equipment should be solely responsible for the damages resulting to this equipment. It is not disputed that AMF sold only the boat to Bayou. After the boat arrived at the dealership, the boat's transom was adjusted by Bayou to fit two engines which were supplied and installed by Bayou. Bayou also supplied the trailer for the boat.
After the boat was reassembled and repaired by Bayou, after being certified as safe and Robert had agreed to accept it, and it was returned to Robert, he experienced several problems which were unrelated to the initial repairs arising from the defective fuel sending unit. Robert had a problem with one of the engine's power trim tilt control pumps and rotten fuel lines, which were repaired by a local area dealership at a cost of $345.39. When Robert experienced additional problems with the engines, it was discovered that the transom had been cut too high by Bayou and had to be cut down and restructured and the engines rehung at a cost of $200.00. Shortly thereafter, Robert found a bent wheel on the trailer and was told that the trailer that Bayou had supplied was undersized for the boat. Robert traded in the trailer for $1,000.00 and purchased a new one.
AMF also asserts that since it did not manufacture, warrant, sell, or install the engines or trailer supplied by Bayou, it should not be held liable for any depreciation or attorney's fees incurred in relation to this equipment. AMF only sold the hull of the boat to Bayou for $8,000.00. Prior to the sale to Robert, Bayou modified the boat's transom, and attached two engines, provided appropriate tackle, and supplied a trailer which was all then sold to Robert.
Since Bayou supplied and sold the trailer and the two engines of the boat, AMF should not be assessed for the damages associated with that equipment. Bell v. Fiat Distributors, Inc., 357 So.2d 607 (La.App. 1 Cir.1978). The amounts of $345.39 for repairs to the motor trim tilt control pump and $4,266.00 for depreciation on the engines are hereby deleted from the judgment against AMF. The amount of $600.00 for depreciation on the wrong size trailer, which is the difference in the original price of $1,600.00 and the $1,000.00 trade-in, is also hereby deleted from the judgment against AMF. The judgment in favor of Bayou and against AMF is thus modified accordingly. Since Robert has not appealed the judgment finding Bayou not liable we cannot assess these damages on appeal against Bayou. The trial judge awarded Bayou $13,488.80 for its attorney's fees and $769.50 for repairs to the fuel sending unit and reassembly of the boat on its third party demand against AMF. We find that the evidence supports these awards and that the trial judge was not manifestly in error or clearly wrong in making these awards. Since Bayou supplied the two engines and trailer, it should be held liable for the repairs and depreciation to these items. Therefore, we hereby reduce the judgment awarded in favor of Robert and against AMF by $5,211.39, being *549 the sums of $4,266.00 for depreciation to the engines, $600.00 for depreciation to the trailer, and $345.39 for motor trim pump repairs and other repairs.

ASSIGNMENT OF ERROR NUMBER 4
In its final assignment of error, AMF contends that the trial court erred in awarding damages for mental anguish and inconvenience. The trial judge awarded $5,000.00 to Robert for "frustration, inconvenience, mental anguish, loss of use, etc." AMF argues that this was error because Robert made no showing that the fishing boat was for intellectual enjoyment, citing Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La. 1976), and subsequent cases.
In Meador, supra, the Supreme Court held that nonpecuniary damages are not recoverable where the object of a contract is physical gratification or anything other than intellectual gratification. The Supreme Court has recently stated that the rule today is that nonpecuniary loss may not be recovered in a simple breach of contract case unless the contract is intended to gratify a nonpecuniary interest. Lafleur v. John Deere Co., 478 So.2d 1390 (La.App. 3 Cir.1985), writ granted, 481 So.2d 1326 (La.1986), aff'd, amended and rendered, 491 So.2d 624 (La.1986). Since this case arose in 1982, before LSA-C.C. Art. 1934(3) was replaced by LSA-C.C. Art. 1998 in 1984, the law to be applied is that "nonpecuniary damages are not allowed in a simple breach of contract case unless the contract has for its object the gratification of some intellectual enjoyment." Lafleur, supra, at page 630.
At trial, Robert testified that fishing was his only hobby and that during the season he fished as often as three to four times a week. He also stated that the purchase of the Robalo fishing boat had been a fantasy of his. During the period in which he was without the boat, Robert testified that he became so anxious and frustrated that he eventually consulted a psychologist, Dr. Ken Bouillion. Dr. Bouillion confirmed that Robert had suffered a great deal of frustration and anxiety through his problems with the boat. He also testified that fishing and boating was Robert's primary recreational outlet, and that it was important for a professional like Robert, who was a dentist, to have an outlet in which to release his stress.
The trial judge awarded $5,000.00 in damages for "frustration, desparation [sic], anger ... for not being able to fish for two seasons, between eight and ten months, including the one consultation with Dr. Bouillion ..." The judge found that the damages were sustained during the two years, prior to certification of the safety of the boat, in which Robert was deprived of the use of his boat and related equipment.
Meador established the rule that where the principle or exclusive object of a contract is intellectual enjoyment, nonpecuniary damages are recoverable as well as damages for mental distress, aggravation, and inconvenience resulting from such loss, or denial of intellectual enjoyment. Applying this principle of law to the present case, we do not find that the trial judge was manifestly in error in concluding that Robert is entitled to recover damages for mental anguish and inconvenience as the evidence shows that the boat was purchased exclusively for recreational purposes which had as its principal object the intellectual enjoyment of Robert, notwithstanding that the peripheral, or incidental, or perhaps even concurrent object of the boat purchase might be the physical gratification of Robert. See Guillory v. Jim Tatman's Mobile Homes, Inc., 490 So.2d 1185 (La. App. 3 Cir.1986); Guitreau v. Juneau, 479 So.2d 431 (La.App. 1 Cir.1985); B & B Cut Stone, Inc. v. Resneck, 465 So.2d 851 (La. App. 2 Cir.1985); McManus v. Galaxy Carpet Mills, Inc., 433 So.2d 854 (La.App. 3 Cir.1983); Whitener v. Clark, 356 So.2d 1094 (La.App. 2 Cir.1978), writ den., 358 So.2d 638, 641 (La.1978); Ducote v. Arnold, 416 So.2d 180 (La.App. 4 Cir.1982), writ den., 421 So.2d 238 (La.1982).
AMF is liable for the damages incurred by the two-year delay in repairs since it could have easily had the boat certified as safe and saved the expenses of the suit. AMF's position that it should not have been required to have the boat certified *550 safe from the possible danger caused by the leak is even more untenable in view of the dispute about whether or not it had told Bayou the foam in the boat had to be replaced when they knew this was what Robert had been told. Since the delay in repairs was attributable solely to the fault of AMF, we find that the trial court was not manifestly in error in assessing damages for mental anguish solely against AMF.

ATTORNEY'S FEES
Bayou and Robert also requested an increase in the award for attorney's fees for work in answering the appeal taken by AMF. Attorney's fees are awardable in a redhibition action when the trial court orders a reduction in price rather than a rescission of the sale. Ball, supra. Attorney's fees are allowable to the plaintiff under LSA-C.C. Art. 2545 and may be fixed by an appellate court. Albritton v. McDonald, 363 So.2d 925 (La.App. 2 Cir. 1978); Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504 (La.App. 4 Cir.1977), writ den., 350 So.2d 1223 (La. 1977). We therefore find that Robert is entitled to an increase in attorney's fees for this appeal.
Ordinarily, the seller would also be entitled to an increase for additional attorney's fees on appeal. John Deere Indus v. Willett Timber Co., 380 So.2d 182 (La.App. 3 Cir.1980), writ den., 381 So.2d 1234 (La. 1980). In this case, however, Bayou is not entitled to an increase of attorney's fees on appeal since it has been held solely liable for some of the damages claimed by Robert. For this reason Bayou is therefore not entitled to indemnification by AMF for any additional attorney's fees on appeal.
For the foregoing reasons, we grant Robert's request for additional attorney's fees on appeal and set them in the sum of $1,000.00 and render judgment for this sum against AMF. We deny Bayou's request for an increase in its attorney's fees on appeal.

JUDGMENT
For the foregoing reasons, the judgment of the trial court in favor of Robert assessing all damages, interest, costs, and attorney's fees against AMF is amended and reduced by the sum of $5,211.39, which is the sum of $343.39 for repairs to the engines, $4,266.00 for depreciation of the engines, and $600.00 for depreciation on the trailer. It is further ordered that the award of attorney's fees for the cost of this appeal in favor of Robert be increased by $1,000.00 and assessed against AMF. All costs of this appeal are taxed one-half (½) to the defendant-appellant, AMF, Inc., and one-half (½) to the defendant-appellee, Bayou Bernard Marine, Inc.
AMENDED AND RENDERED.