690 So.2d 49 (1996)
DIXIE ROOFING COMPANY OF PINEVILLE, INC., Plaintiff-Appellant,
v.
ALLEN PARISH SCHOOL BOARD, Defendant-Appellee.
ALLEN PARISH SCHOOL BOARD, Plaintiff-Appellee,
v.
DIXIE ROOFING COMPANY OF PINEVILLE, INC., et al., Defendants-Appellants.
Nos. 95-1526, 95-1527.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
Rehearing Denied July 15, 1996.
Writ Denied November 8, 1996.
*51 James A. Bolen Jr., Madeline Lee, Alexandria, for Allen Parish School Board.
William J. Hamlin, William Charles Ellison, New Orleans, for Firestone Tire.
Before YELVERTON, COOKS and DECUIR, JJ.
COOKS, Judge.
This is an appeal from a judgment in favor of the Allen Parish School Board against Dixie Roofing Company of Pineville and Firestone Tire and Rubber Company for a defective roof. For the following reasons, we affirm.

FACTS
The Oakdale Elementary School was built in 1979. The original roof on the school began to leak. When repair attempts proved futile, the Allen Parish School Board (hereinafter referred to as Board) sued the original contractor and roofer. The case was settled, and the Board decided to use the settlement funds to construct a new roof.
On July 3, 1985, the Board executed a written contract with Dixie Roofing Company of Pineville for the sum of $183,835.00 to remove the old roof and replace it with a new *52 roof. Part of the materials used to replace the roof consisted of a single ply rubber membrane called EPDM RubberGard, manufactured by Firestone Tire and Rubber Company. The contract expressly provided detailed directions to assure proper installation of Firestone's EPDM roofing material. The specifications also referred to Firestone's warranty, which required approval by Firestone on completion of the construction. Firestone permits only licensed contractors to use its material as a warranty condition. Eventually Dixie was licensed by Firestone and the two companies entered into a License Agreement. Pursuant to this agreement Dixie bought the EPDM material from Firestone.
Work began on the school in October, 1985. In mid-November 1985, while the re-roofing project was ongoing, a heavy rainstorm resulted in severe leaking, causing damage to the school's walls, ceilings, carpet and books. Firestone contended the leaks occurred because Dixie used a non-Firestone approved cement, contrary to specifications.
Construction of the roof was completed and the job was readied for inspection in July, 1986. The Board's architect issued a punch-list of construction corrections and required correction of the problems listed before he would "recognize the warranty." After completion of these, Firestone approved the job and issued its warranty to the Board on September 5, 1986.
From the very outset, the new roof leaked. Dixie was notified of the problems and made unsuccessful attempts to repair the roof. Because the leaks persisted, the Board withheld money due Dixie pursuant to the contract. In 1990 and 1991 the Board hired its own roofer to complete various repairs.

PROCEDURAL HISTORY
Dixie filed suit in June, 1987 for declaratory judgment against both the Board and Firestone. The suit involved the interior damage caused in the initial November, 1985 rainstorm and sought a declaration as to responsibility for that damage. In February 1990, the Board filed suit against Dixie, alleging Dixie breached its contact by failing to adhere to specifications, use proper materials, and perform in a workmanlike manner. Approximately 10 months later, the Board served Firestone with a First Supplemental and Amending Petition alleging Firestone also breached its warranty contract. Firestone filed an exception of no cause of action and answered, asserting as affirmative defenses the terms, conditions and limitations of the Warranty, and prescription.
Suit was tried in July, 1994, followed by extensive briefing to the trial court. The trial court rendered a decision on January 23, 1995, holding Firestone and Dixie jointly liable to the Board in the amount of $339,702.61, plus costs and judicial interest. The trial court found Dixie liable because it contracted to build a roof guaranteeing it would not leak and it failed to accomplish this feat, due in part to defective installation. The trial court also found the RubberGard roofing membrane contained redhibitory defects, for which the manufacturer, Firestone, was responsible. Firestone and Dixie have appealed the judgment.

ANALYSIS
Firestone alleges it cannot be subject to a redhibitory action for the following reasons:
1) The Firestone warranty precludes liability for redhibitory defects.
2) Firestone, as manufacturer of a component part of a "whole thing" constructed by another, cannot be subject to a redhibitory action.
3) Firestone made no representations of quality of product that were relied on by the School Board, and therefore no cause of action in redhibition was created
4) Any redhibitory action, if available, has prescribed.
5) Alternatively, the evidence in the record is legally insufficient to support a finding of a redhibitory defect
Initially, Firestone argues its warranty unambiguously waives liability for redhibitory defects. Firestone also contends the trial court's failure to discuss this waiver in its reasons for judgment requires this court to conduct a de novo review of the record. However, simply because a judgment does *53 not specifically address every defense presented does not amount to reversible error. Such silence on the part of the trial court can only be considered a rejection of that defense. Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc., 525 So.2d 1157 (La.App. 3 Cir.), writ denied, 530 So.2d 570 (La.1988); Reed v. Seacoast Products, Inc., 458 So.2d 971 (La.App. 3 Cir.1984).
The record shows Firestone's warranty was not incorporated in the original contract between Dixie and the School Board. Firestone acknowledges in brief the warranty issuance required completion of the construction and approval by it. A valid waiver of warranty requires all of the following: (1) it must be written in clear and unambiguous terms; (2) it must be contained in the sales document; and (3) it must be brought to the attention of the buyer or explained to him. Matthis v. Couvillion, 613 So.2d 1024, 1025 (La.App. 3 Cir.1993); Thibodeaux v. Meaux's Auto Sales, Inc., 364 So.2d 1370, 1371 (La.App. 3 Cir. 1978). Therefore, under Louisiana law the warranty does not limit the School Board's right to seek damages.
Firestone also contends it cannot be liable in redhibition because a manufacturer of a component part of a "whole thing" constructed by another is not subject to the redhibitory action. Firestone argues it did not manufacture the roof, nor sell the roof, but merely sold some of the roofing materials. Firestone relies on the case of Pittman v. Kaiser Aluminum, 559 So.2d 879 (La.App. 4 Cir.1990). In Pittman the plaintiff sued the manufacturer of certain wiring components installed in his new home after it was destroyed by fire, alleging faulty wiring led to the disaster. The court of appeals upheld the exceptions of no cause of action finding no vendor/vendee relationship existed between the building owner and the component part manufacturers.
We find the facts presented in this case more closely resemble those present in Aizpurua v. Crane Pool Co., Inc., 449 So.2d 471 (La.). In Aizpurua, the plaintiff was allowed to sue the manufacturer of a pool liner, when the liner of the pool separated from the cement wall and started to rip. The court concluded the plaintiffs in Aizpurua had a right of action against the manufacturer for breach of an implied warranty. We find the same situation applies in this case.
Firestone next argues it did not make any representations regarding the quality of product; and, thus, no cause of action in redhibition exists. This argument is not supported by the record. The architects retained by the School Board to oversee the roofing project received the following letter from Firestone:
We have conducted a roof inspection, and have reviewed the situation with our Engineering Department and feel confident that this is the long term solution to your problem and will eliminate blistering and leaks.
This letter was attached to the contract itself, and the Board's architects testified the Board was impressed with Firestone's representations concerning its roofing system. It is reasonable to conclude the School Board agreed to purchase the Firestone Rubber-Gard roofing system based upon these representations. Therefore, this argument is without merit.
Firestone also argues it was not notified of any leaks in the roof until 1989, and therefore any claim in redhibition against it prescribed "by the end of September, 1987," when its warranty was issued to the School Board.
At the time of this dispute, La.Civ. Code art. 2534 provided a redhibitory action prescribes one year after the date of sale, or one year from discovery of the defect if the seller is in bad faith, that is, knew or is chargeable with knowledge of the defect. Additionally, when attempts to repair are performed, prescription does not commence until such efforts are abandoned. Manning v. Scott-Hixson-Hopkins, Inc., 605 So.2d 233 (La.App. 2 Cir.1992); Ford Motor Credit Co. v. Bower, 589 So.2d 571 (La.App. 1 Cir.1991).
The trial court stated, and the record supports, that the School Board gave Dixie and Firestone every chance to repair the roofs. The record shows Dixie repaired approximately *54 four leaks during 1987. A Firestone representative testified Firestone was notified of leaks on June 26, 1987. While Firestone was careful not to characterize anything it did as "attempted repairs," the record is clear that Firestone authorized Atlas Roofing to perform repairs on the roof. The record contains an emergency purchase order dated May 19, 1989, requesting Atlas Roofing to determine the source of the leaks and repair same. Upon inspection, Atlas Roofing determined the severity of the problem exceeded the monetary limits set by Firestone to make repairs. No repairs were ever made by Atlas Roofing. As the problems became worse and it became apparent neither Dixie Roofing nor Firestone would remedy the situation, the School Board filed suit on April 10, 1990 against Dixie Roofing. A later supplemental petition was filed adding Firestone as a defendant.
We will not penalize the School Board for attempting to remedy the defective roof by allowing the defendants to make repairs, rather than immediately filing suit. As stated earlier the jurisprudence provides when attempts to repair are performed, prescription does not commence until such efforts are abandoned. Under the circumstances, the School Board's claims in redhibition against Firestone did not prescribe.
Firestone next argues the evidence in the record is legally insufficient to support a finding of a redhibitory defect. A consumer has a cause of action in redhibition against a manufacturer based on the manufacturer's implied warranty without any need for privity of contract. Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972). The buyer may prove the existence of a redhibitory defect before the sale by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. Cox v. Lanier Business Products, Inc., 423 So.2d 690 (La.App. 1 Cir.), writ denied, 429 So.2d 129 (La.1982). The manufacturer of a product is presumed to know of the defects of the thing. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978); Jessen v. Dr. Kenneth W. Wimberly, D.D.S., 610 So.2d 252 (La.App. 3 Cir. 1992).
A declaration made by the seller that the object sold has some quality, which it does not possess, gives rise to an action in redhibition, if this quality was the principal motive for the buyer's purchase. This action lies even though such quality does not constitute a vice or defect. Reiners v. Stran-Steel Corp., 317 So.2d 657 (La.App. 3 Cir.), writ denied, 320 So.2d 914 (La.1975). The ultimate question of the existence of a redhibitory defect is a question of fact for the trial court which should not be overturned absent manifest error. Don Smart & Associates v. Lanier Business Products, Inc., 551 So.2d 665 (La.App. 1 Cir.1989).
In his reasons for judgment, the trial judge stated as follows:
In this case, two experts, Louis Brown and Steven Kinel, testified that this roof was defective because it had shrunk and continues to shrink which is cause (and will continue to cause) numerous leaks and water damage. There was also the letter sent by Firestone to Allen Parish School Board's architect, stating that Firestone had performed a roof inspection, consulted with their engineering department, "and feel confident that this is the long term solution to your problem and will eliminate blistering and leaks (sic)." Suffice it to say, it did not.
Mr. Smith testified as the representative of Allen Parish School Board, that had he known that this roof would experience an excess of fifty leaks in a four year period, he would have never purchased this Firestone RubberGard Roofing System.
It was also quite apparent, based upon the history of this roof, that the principal motive of purchasing this Firestone RubberGard Roofing System was to put an end to the leakage problem. There is no dispute that it has not done this. The only dispute is the cause of this roof's failure and the consequent measures to be taken to remedy the problem.
It has been repeatedly held that a leaking roof on a building is a defective roof. Dodd v. Tucker, 528 So.2d 644 (La.App. 2 *55 Cir.1988); Hunter v. Wilson, 355 So.2d 39 (La.App. 3 Cir.), writ denied, 357 So.2d 1154 (La.1978).
It is uncontradicted that this roof had an excess of fifty (50) leaks in the past four years, which is excessive even by the Firestone representative's standards.
With respect to proving that the defect existed before the sale, both Steven Kinel and Lewis Brown testified these leaks were predominately caused by the shrinkage of the roofing membrane and that shrinkage was a problem inherent in these particular types of roofs, which is known throughout the roofing industry.
In proving that the defect existed at the time of sale, a reasonable inference may arise, in the absence of an intervening cause or other explanation, that the defect existed at the time of the sale. Millspaw v. Knight, 430 So.2d 1207 (La.App. 1 Cir. 1983).
In this case, there was expert testimony that although shrinkage most likely began immediately after installation of the roof, such a defect would not manifest itself until shrinkage had occurred to such an extent that the membrane would pull away form the perimeter, thereby causing leaks. This would be especially so where the membrane was initially "loose laid."
Shrinkage is the only reasonable explanation for the present taut and stretched membrane, when, at the time of installation, it hung loosely in a 90 degree angle from the parapet wall, the membrane flashing extending up and over the parapet wall, and it is now so tight it stretches from the ballast to the top of the parapet wall diagonally, in a tented fashion.
No other reason was given for the shrinkage of the RubberGard Roofing System and therefore Allen Parish School Board is entitled to a reasonable inference that this defect existed at the time of the sale, although it did not manifest itself immediately.
Moreover, it is not necessary that the buyer prove the cause of the redhibitory device or defect. It is only necessary to prove the existence of such a vice. Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La.App. 3 Cir.), writ denied, 515 So.2d 1107, 1108 (La.1987); Broussard v. Breaux, 412 So.2d 176 (La.App. 3 Cir.), writ denied, 416 So.2d 115 (La.1982).
In this case, it is uncontroverted that this roof failed to perform in the intended manner under conditions of normal use. If the plaintiff proves that the product purchased is not reasonably fit for its intended use, such is sufficient, and the object is thus defective, without plaintiff being required to prove the exact or underlying cause for the product's malfunction. Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La.App. 3 Cir.), writ denied, 515 So.2d 1107, 1108 (La.1987); Gamble v. Bill Lowery Chevrolet, Inc., 410 So.2d 1155 (La.App. 3 Cir.1981); Rey v. Cuccia, 298 So.2d 840 (La.1974).
After reviewing the record, we do not find the trial court manifestly erred in finding the Firestone roofing system was defective.
We likewise find no error in the trial court's finding Dixie Roofing liable. Dixie Roofing as seller and installer of the Firestone Roofing System, is liable for the damages sustained by the School Board for the defective roof. This court in Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La. App. 3 Cir.), writ denied, 515 So.2d 1107, 1108 (La.1987), described the seller's liability as follows:
"... a negligent seller cannot escape the repercussions of its own negligent conduct simply by the existence of a defect in the thing sold. If dilatory tactics or negligent repairs aggravate the defect or create more damage, then the seller can be held liable."
(Citations omitted.)
We find no error on the part of the trial court in holding Dixie Roofing's negligence was a substantial factor in aggravating the defects of the Firestone Roofing System and exposed the buyer to sustaining greater damage. There was ample testimony that work done in installing the system was defective, and contributed to the roof's leaking problems.

*56 DAMAGES
Both Firestone and Dixie Roofing argue the trial court's damage award was excessive. Specifically, they argue their liability is limited to the costs associated with fixing the existing leaks, and not for replacing the roof. Firestone correctly points out although the trial court decided the case on redhibition grounds, damages were awarded under a breach of contract theory. The measure of damages for a breach of contract is the sum that will place plaintiff in the same position as if the obligation had been fulfilled. Meltzer v. Roof Coatings, Inc., 536 F.2d 663 (5th Cir.1976). The measure of recovery in redhibition is usually the cost of repairs necessary to convert the unsound structure into a sound structure. Brown v. Dauzat, 157 So.2d 570 (La.App. 3 Cir.1963); Beth Israel v. Bartley, Inc., 579 So.2d 1066 (La.App. 4 Cir.1991). Firestone argues, if this suit sounds in redhibition, it should only be required to pay for the cost of repairs to fix the roof, not replace it with a new one. However, where the replacement of the roof is necessary to cure the defects, the cost of replacing the roof is a proper element of damages. Guy Williams Realty v. Shamrock Const., 564 So.2d 689 (La.App. 5 Cir. 1990), writ denied, 569 So.2d 982 (La.1990).
The trial court found replacement of the roof was necessary. Steve Kennel, qualified as an expert in the installation and repair of roofs, testified as to the effectiveness of making repairs rather than replacing the roof:
A: I think this was also in our deposition yesterday. What needs to be determined is exactly why your base flashing isafter nine years is different than it was installed. And if it's just a flashing problem, then you could conceivably replace the flashings, coping caps, etcetera to take care of that problem. If the problem is the membrane in the field of the roofit would be my opinion that if you have a problem if the apparent shrinkage is coming from throughout the system and you replaced a five, six or seven foot wide section around the perimeters and you've replaced roughly five to ten percent of the roof area, my question back to the attorney yesterday in the deposition was the fact of what about the other eighty to ninety percent of the roof that's left in place? Will it experience this problem in two, three, four or five years down the road.
Q: Okay
A: And that was something that the repairs I just couldn't answer and say definitely do the repairs.
Q: So if it continued to shrink, that would not remedy the situation?
A: I don't think so.
Q: Would you suggest replacement of this particular roof?
A: I have given a number fora budget number for the replacement of that roof. I did not recommend that the roof be replaced.
Q: Would you recommend that the roof be replaced?
A: I think from the building owner's standpoint, that may be in his best interest.
Considering the number of repairs previously performed on the roof, and the continued problems with leaking experienced after repairs, we cannot say the trial court erred in finding replacement of the roof was necessary to cure the defects.
Firestone also argues the trial court erred in awarding consequential damages to the School Board. Firestone bases its argument on the grounds its warranty "clearly precludes any liability for consequential damages." However, as stated earlier, under Louisiana law since Firestone's warranty was not made part of the contract it cannot limit the School Board's right to recover damages. The School Board was entitled to recover water damage to carpet, tiles and books. See Beth Israel v. Bartley, Inc., 579 So.2d 1066.

ATTORNEY FEES
Both defendant's contest the trial court's award of attorney fees on the grounds that the School Board had no claim in redhibition. As discussed earlier, that argument is without merit. Attorney fees are authorized by the redhibition statutes, and the *57 amount of attorney fees was stipulated to by all parties. Therefore, this assignment of error is without merit.

SOLIDARY LIABILITY
Dixie Roofing argues the trial court erred in casting it and Firestone solidarily liable. However, Dixie Roofing bases this argument on the erroneous premise that this is not a redhibition case. As Dixie Roofing admits in brief, La.Civ.Code art. 1797 provides a vendor and manufacturer of a "defective product" can under certain circumstances be solidary obligors to the vendee of the product. See also Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La.App. 3 Cir.), writ denied, 515 So.2d 1107, 1108 (La. 1987). The trial court did not err in casting Dixie Roofing and Firestone solidarily liable.

IMPROPER CREDIT
Dixie Roofing argues the trial court erred in giving Firestone a credit for the sum of $19,383.50, which is the sum initially withheld by the School Board from the contract price owed Dixie. We agree. Firestone was paid all sums it was owed by Dixie for the purchase of materials, and we will amend the judgment to give credit for this amount only to Dixie Roofing.

DECREE
For the above reasons, the judgment of the trial court is amended to give credit for the sum of $19,383.50 solely to Dixie Roofing. In all other respects, the judgment is affirmed. All costs of this appeal are assessed equally to the defendants-appellants, Firestone and Dixie Roofing.
AFFIRMED AS AMENDED.